**Date Signed:**
**August 17, 2017**




# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>RICHARD ALLEN PRICE, JR.,<br><br>Debtors. | Case No. 16-00036<br>Chapter 7 |
| ELIZABETH A. KANE, Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS W. COULSON, et al.,<br><br>Defendants. | Adv. Pro. No. 16-90026<br><br>Dkt. No. 32 |

## MEMORANDUM OF DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This adversary proceeding presents the question of whether a transfer of $123,716.23 to defendant, Thomas Coulson, is an avoidable preference under section 547(b) of the Bankruptcy Code, based on Mr. Coulson's status as a secured or unsecured creditor.

## I. Background

Most of the historical facts are undisputed. In 2002, Mr. Coulson sought to purchase real property located at 4105 Black Point Road, Honolulu, HI 96816 (the "property"). The debtor, Richard Allen Price, and his then-wife, Julia Price, sought to purchase that same property. The Prices and Mr. Coulson entered into an "Agreement Regarding Subsequent Sale of Property" and an "Addendum to DROA Dated 2/1/2002" which stated, among other things, that Mr. Coulson would terminate his agreement to buy the property and that, if the Prices resold the property during the next twenty years, Mr. Coulson would receive 50% of any net profit.[1] The agreement was not recorded at the time.

In 2010, Mr. Coulson recorded an "Affidavit of Adverse Claim" as to the property and attached the agreement and addendum as exhibits.[2]

In 2011, the Prices sued Mr. Coulson in state court for declaratory relief on claims related to the affidavit, agreement, and addendum.[3] Mr. Coulson counterclaimed with a claim for specific performance and damages.[4] During the state court case, the Prices sold the property and netted $122,635.22 in sale

---

[1] Dkt. 33 at 15-23.

[2] Dkt. 33 at 12-23.

[3] Dkt. 33 at 33-40.

[4] Dkt. 33 at 25-31.

proceeds.[5] Mr. Coulson and the Prices agreed that the net proceeds would be held in escrow until (1) the parties issued joint instructions to the escrow holder, (2) the escrow holder received "a court order directing the Escrow Holder to release the funds," or (3) December 3, 2012.[6] Later, the Prices obtained a court order providing for the transfer of the funds from the escrow account to an account held by the state court.[7]

Mr. Coulson filed a motion for summary judgment on the complaint and the counterclaim[8] which sought a determination of liability and an award of damages "in an amount to be proven."[9] The state court granted the motion in an order entered on July 24, 2012.[10] After an evidentiary hearing, the state court entered a minute order on January 30, 2015, determining that Mr. Coulson was entitled to recover $362,884.84.[11]

On November 20, 2015, the state court entered a Final Judgment in the amount of $423,601.17 and directed the clerk of the state court to pay to Mr.

---

[5] Dkt. 33 at 46-47.

[6] Dkt. 33 at 48-49.

[7] Dkt. 33 at 61-63.

[8] Dkt. 33 at 65-86.

[9] Dkt. 33 at 86.

[10] Dkt. 33 at 88-92.

[11] Dkt. 39 at 22-25.

Coulson the funds deposited with the clerk in partial satisfaction of the judgment.[12] For reasons that the record does not explain, the clerk did not immediately comply with this directive. The state court entered an amended final judgment on January 4, 2016.[13] On January 7, 2016, the clerk disbursed $123,716.23 to Mr. Coulson in partial repayment of the state court judgment.[14]

On January 15, 2016, Mr. Price filed his chapter 13 voluntary petition. The case was converted to chapter 7 on January 27, 2016. The chapter 7 trustee initiated the instant adversary proceeding against Mr. Coulson to recover the $123,716.23 payment as a preference under section 547(b).

## II. Jurisdiction

The bankruptcy court has personal and subject matter jurisdiction. Venue is proper in this district.

The trustee alleges that this is a "core proceeding."[15] Mr. Coulson admits this allegation.[16] Therefore, Mr. Coulson has consented to the entry of a final, appealable

---

[12] Dkt. 39 at 27-28.

[13] Dkt. 33 at 94-95.

[14] Dkt. 33 at 97.

[15] Dkt. 1 at 3 ¶ 5.

[16] Dkt. 6 at 2 ¶ 1. The trustee's complaint also states that the trustee consents to the entry of final judgment. Dkt. 1 at 3 ¶ 6. Mr. Coulson's answer denies this allegation for lack of knowledge or information. Dkt. 6 at 2 ¶ 3. Contrary to Fed. R. Bankr. P. 7008, Mr. Coulson's answer does not expressly state whether he consents, but his admission that this is a core proceeding can only be construed as consent.



U.S. Bankruptcy Court - Hawaii #16-90026 Dkt # 48 Filed 08/17/17 Page 4 of 12

judgment by the bankruptcy court.

## III. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] In resolving a summary judgment motion, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party.[18] The court does not weigh evidence, but rather determines only whether there is a genuine issue for trial.[19] Where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.[20]

## IV. Discussion

The Bankruptcy Code authorizes a trustee to avoid:

> any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

---

[17] Fed. R. Civ. P. 56(c), made applicable by Fed. R. Bankr. P. 7056.

[18] *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

[20] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).



U.S. Bankruptcy Court - Hawaii #16-90026 Dkt # 48 Filed 08/17/17 Page 5 of 12

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.[21]

There is no dispute that the first and second elements are satisfied. The first element is satisfied because Mr. Coulson had recovered a judgment against the Prices which made him a creditor of Mr. Price. The second element is met because the transfer was a payment on account of the judgment, which was a debt owed by Mr. Price before the transfer was made.

The third and fourth elements hinge on when the transfer of the funds occurred. The fourth element pertains specifically to the timing of the transfer. The timing issue is also relevant to the third issue: if the transfer occurred within ninety

[21] 11 U.S.C. § 547(b).



U.S. Bankruptcy Court - Hawaii #16-90026 Dkt # 48 Filed 08/17/17 Page 6 of 12

days of Mr. Price's bankruptcy petition, Mr. Price's insolvency is presumed.[22] (Mr. Coulson offers no evidence to rebut the presumption.)

Section 547(e)defines when a transfer occurs for purposes of section 547:

(1) For the purposes of this section--

* * *

> (B) a transfer of . . . property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, . . . a transfer is made–

> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time . . .;
>
> (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days; or
>
> (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of--
>
> > (i) the commencement of the case; or
> >
> > (ii) 30 days after such transfer takes effect between the transferor and the transferee.[23]

The trustee contends that the transfer occurred when the clerk of court disbursed the money to Mr. Coulson. Mr. Coulson makes four alternative

---

[22] 11 U.S.C. § 547(f).

[23] 11 U.S.C. § 547(e).



U.S. Bankruptcy Court - Hawaii #16-90026 Dkt # 48 Filed 08/17/17 Page 7 of 12

arguments.

First, he contends that the relevant transfer occurred either when the parties entered into the agreement or when he recorded his Affidavit of Adverse Claim. Mr. Coulson contends that this created a lien against the property many years before the bankruptcy filing. I disagree.

A lien is a charge on property[24] that may be created by statute, by contract, or if equity requires.

A statutory lien arises solely by force of a statute on specified circumstances or conditions.[25] No statute gives Mr. Coulson a lien on the property or its proceeds.

A contractual lien may arise by consent of the parties via a mortgage or security agreement that grants a security interest. The agreement gave Mr. Coulson a contingent and time-limited right to payment of an amount of money measured in part by the resale price of the property. The agreement is unambiguous in this respect: it did not grant Mr. Coulson a lien on or other interest in the real property. The Affidavit of Adverse Claim was simply a notice of Mr. Coulson's claims under the agreement. Because the Affidavit of Adverse Claim was unilaterally signed by

---

[24] *See* LIEN, Black's Law Dictionary (10th ed. 2014).

[25] 11 U.S.C. § 101(53).



U.S. Bankruptcy Court - Hawaii #16-90026 Dkt # 48 Filed 08/17/17 Page 8 of 12

Mr. Coulson, it could not function as a grant of an interest in the property by the Prices.

An equitable lien is a right, enforceable only in equity, to have a demand satisfied from a particular fund or specific property, without having possession of the fund of property.[26] An agreement to pay a debt out of a particular fund is insufficient to create an equitable lien.[27]

Therefore, Mr. Coulson has no statutory, contractual, or equitable lien on the property or its proceeds.

Second, he argues that the relevant transfer occurred when the net sales proceeds were deposited in escrow. I disagree. The escrow preserved of the status quo. The deposit of the money in escrow did  not materially change the rights of Mr. Coulson and the Prices. At the outset, the Prices owned the property. They could not sell it and use the proceeds as they wished, however, because Mr. Coulson's recorded affidavit rendered their title unmarketable. They could only get and use the proceeds if Mr. Coulson agreed to remove his affidavit or a court determined that Mr. Coulson's claims were invalid. The Prices and Mr. Coulson then agreed that the Prices could sell the property and deposit the net proceeds in

---

[26] EQUITABLE LIEN, Black's Law Dictionary (10th ed. 2014).

[27] *In re Lewers & Cooke*, 18 Haw. 497, 498 (1907).



U.S. Bankruptcy Court - Hawaii #16-90026 Dkt # 48 Filed 08/17/17 Page 9 of 12

escrow. The escrow instructions provided that the funds would be released only upon mutual agreement of the Prices and Mr. Coulson or the entry of a court order. In other words, the Prices' interest in the escrowed funds were subject to the same restrictions as their rights in the property had been before the sale. Because the deposit of the funds in escrow did not diminish the Prices' rights in or enhance Mr. Coulson's claims to the funds, the deposit was not a "transfer" of the funds.[28]

---

[28] Mr. Coulson cites cases which he says hold that the release of funds from an escrow account is not a preference because escrowed funds do not belong to the debtor. None of those cases so hold. The mere fact that the funds were in escrow was not determinative; rather, the courts carefully examined what rights, if any, the debtor had in the escrowed funds.

In *Whitmore v. Innovation Ventures, LLC (In re Roman)*, 2017 WL 1321758 (Bankr. C. D. Cal. 2017), the court held that the debtor had no interest in the escrowed funds because the funds were already subject to an asset freeze order when they were deposited in escrow. In this case, there was no order adjudicating Mr. Coulson's rights before the funds were deposited; the escrow was established to preserve the status quo, in which neither parties' rights had been adjudicated.

In *Elsaesser v. Trefz (In re Taylor)*, 1995 WL 577361 (Bankr. D. Idaho 1995), a prospective lender had deposited funds in escrow with instructions to disburse them to the borrower upon the satisfaction of certain conditions. The debtor filed a bankruptcy petition before all of the conditions were met. The court held that the debtor had no interest in the funds before the conditions were met. In this case, the funds did not belong to Mr. Coulson before they were deposited.

In *Pan Am. World Airways v. Care Travel Co. Ltd. (In re Pan Am Corp.)*, 138 B.R. 382 (Bankr. S.D.N.Y. 1992), the subject funds were deposited in escrow in lieu of a supersedeas bond. The court held that the deposit of the funds was an avoidable transfer, because it gave the creditor an interest in those funds. The court's comments about whether a release of funds from an escrow could be a preference were dicta.

In *Burch v. Bonded Adjuster, Inc., et al. (In re Estates of Pelc)*, 34 B. R. 823 (Bankr. D. Or. 1983), the buyers, not the debtor sellers, deposited funds into escrow to pay the purchase price for the property, and the funds were used to discharge liens against the property. The court held that the funds remained the buyers' property and never became that of the debtor sellers. Similarly, in



U.S. Bankruptcy Court - Hawaii #16-90026 Dkt # 48 Filed 08/17/17 Page 10 of 12

Third, he argues that the transfer occurred on January 30, 2015, when the state court issued its minute order determining that Mr. Coulson was owed $362,884.84, because at that point "no one other than Coulson could have sought the release of any or all of said funds."[29] Mr. Coulson offers no authority for this proposition, and it is inconsistent with the plain terms of the escrow instructions.[30] Those instructions provided that the escrow holder would not release the funds until the escrow holder received a court order directing the release of the funds. An order adjudicating the Prices' debt to Mr. Coulson was not sufficient.

Therefore, at the earliest, the transfer occurred on November 20, 2015, when the state court entered the judgment that, for the first time, directed the clerk of court to disburse the funds to Mr. Coulson. Because this judgment was entered less than ninety days before Mr. Price filed his bankruptcy petition, the time requirements of the third and fourth elements are satisfied.

To meet the fifth element, the trustee must prove that, because of the transfer, Mr. Coulson had received more than he would have in a chapter 7 case had the transfer not been made. Mr. Coulson does not dispute that, if the transfer

---

this case, the funds remained the Prices' property and did not become Mr. Coulson's property until the judgment directing disbursement of the funds was issued.

[29] Dkt. 38 at 7.

[30] The court's order authorizing the shift of the funds from the escrow holder to the clerk of court did not change the terms on which the escrow holder was holding the funds.

is not avoided and recovered, his total recovery will be greater than that of the unsecured creditors. If he had a lien on the proceeds, however, he would have received those proceeds in a chapter 7 liquidation. But, as I have explained above, Mr. Coulson did not have a lien on the property or its proceeds. Therefore, because Mr. Coulson is an unsecured creditor, the fifth element is met.

Thus, the transfer of the funds from escrow to Mr. Coulson is an avoidable preference under section 547(b) because it was made to Mr. Coulson, a creditor, in partial payment of a debt owed before the transfer was made, while the debtor was insolvent, within the 90- day preference period, and Mr. Coulson would not have received as much had the transfer not occurred.

## V. Conclusion

For the reasons stated above, the trustee is entitled to summary judgment on Count III of the complaint. The trustee's counsel shall submit a proposed judgment.

**END OF ORDER**



U.S. Bankruptcy Court - Hawaii #16-90026 Dkt # 48 Filed 08/17/17 Page 12 of 12